## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACUSETTS

| | |
|---|---|
| MATTHEW ANDERSON,           ) | |
|                                  ) | |
|        **Plaintiff,**          ) | |
|                                    ) | **Civ. No.: 4:24-cv-13168-MRG** |
|            **v.**              ) | |
|                                    ) | |
| **PAUL STRINGHAM, ANN SWANSON**    ) | |
| **STEPHANIE COLLINS & TOWN**       ) | |
| **OF MILLBURY,**                        ) | |
|                                    ) | |
|        **Defendants.**        ) | |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

**GUZMAN, J.**

Plaintiff Matthew Anderson ("Plaintiff" or "Anderson") brings this action against the Town of Millbury, Massachusetts ("Town"), Paul Stringham ("Stringham"), Stephanie Collins ("Collins"), and Ann Swanson ("Swanson") (collectively "Defendants"). Anderson asserts six counts against all Defendants: two claims under 42 U.S.C. § 1983 ("Section 1983") (equal protection and substantive due process), an abuse of process claim, a violation of the Massachusetts Civil Rights Act, Mass. Gen. Law ch. 12 §§ 11H and 11I, a claim for intentional infliction of emotional distress ("IIED"), and a claim for negligent infliction of emotional distress ("NIED").

Anderson asserts that Defendant Stringham used his position as a final policy maker for the Town to work collectively with the other Defendants to wrongfully use their official positions to prevent and/or obstruct Anderson from accessing his property, to prevent him from constructing on his property, and to otherwise interfere with his use and enjoyment of his property. Before the Court are three motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) brought forth by all Defendants. [Def. Town of Millbury's Mot. Dismiss, ECF No. 8; Def.s Stringham and Collins' Mot. Dismiss, ECF No. 11; Def. Swanson's Mot. Dismiss, ECF No. 14]. For the reasons stated below, the Motions to Dismiss are

1

**GRANTED with prejudice** as to Anderson's Section 1983 claims (Counts I & II) and the Court declines to exercise supplemental jurisdiction over Anderson's remaining state law claims, dismissing them without prejudice.

## I.    BACKGROUND

The following relevant facts are taken primarily from the allegations in Anderson's Amended Complaint, [Am. Comp., ECF No. 1-2], and are accepted as true for purposes of this motion. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (explaining that a reviewing court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).") (alterations in original). All plausible inferences are made in Anderson's favor. Id.

The Property at the center of this case consists of approximately 10.17 acres and is located on South Oxford Road and Wedgewood Lane, Millbury, Massachusetts.[1] [Am. Compl. ¶¶ 6, 7, Ex. 26]. The Property had historically been used for agricultural purposes, and the prior owners of the land accessed the Property through a Lane that abuts properties located at 59 and 61 South Oxford Road. [Id. ¶¶ 9, 22]. Anderson began leasing the Property from the prior owners, the Sharron family, in or about October 2020, and purchased the land from them on December 21, 2021. [Id. ¶¶ 7, 74]. During the Sharron family's ownership, the back land was classified as a 61A property used for agricultural purposes, and at the time of the sale to Anderson, the property remained under this classification. [Id. ¶ 39].

Anderson alleges that when he began applying for necessary permits to build a single-story home on the Property (zoned as agricultural land) and use the Lane to access it, he was confronted with delays, pretextual issues, false statements, and false guidance by Town employees. [Id. ¶ 13]. Anderson asserts

---

[1] The residential address of Anderson's property is 4 Wedgewood Lane, Millbury, MA 01527. This action involves an unlisted parcel of land, the "Lane," abutting the property that provides access to South Oxford Road. [Am. Compl. ¶ 9].

that Town employees, Defendants Swanson, Stringham, and Collins,[2] engaged in a plan to interfere and deprive him of permits and approvals to which he was entitled, with respect to the Property. [Id. ¶ 6].

    i.    **Events under Anderson's Leasehold**

In or about October 2020, the Sharrons agreed to sell the Property, and Anderson began leasing the Property. [Id. ¶¶ 17-18]. On December 20, 2020, the parties entered into a Purchase and Sale Agreement, and his previous lease payments were applied against the purchase price. [Id. ¶ 19]. The parties closed a year later, and Anderson acquired full ownership on December 21, 2021. [Id. ¶ 74].

Anderson alleges that wrongful conduct by the Defendants began on December 28, 2020, when Defendant Swanson lodged a formal complaint, using her town email, with Defendant Stringham and the Town Planner, Laurie Connors, stating that Anderson was operating his business out of, and storing heavy machinery at, the Property. [Id. ¶ 21]. Swanson lives with her husband at 59 South Oxford Road, which abuts the Lane. [Id. ¶ 22]. That same day, Swanson contacted Conor McCormack, the then-Chairman of Conservation, about another formal complaint lodged by Beverly Sylvia,[3] who lived at 61 South Oxford Road, regarding Anderson and his use of the Lane. [Id. ¶ 23]. In the afternoon of December 28, 2020, Stringham informed Swanson that he had received a complaint two weeks earlier and had already begun investigating Anderson's right to use the Lane to access the Property. [Id. ¶ 25]. Stringham also told Swanson that he drove to the Property and issued a "verbal stop work order" to Anderson. [Id. ¶ 27 (quoting Ex. 4)].

---

[2] Defendant Paul Stringham was at all relevant times the Building Inspector/Zoning Enforcement Officer for the Town and managed the Milbury Building Department. [Am. Compl. ¶ 3]. Defendant Stephanie Collins was at all relevant times the secretary to the Planning Department for the Town. [Id. ¶ 5]. Defendant Ann Swanson was at all relevant times the secretary/clerk to the Millbury Fire Department and had previously served as secretary for Defendant Stringham and the Millbury Building Department. [Id. ¶ 4].

[3] Beverly Sylvia is a relative of Swanson. [Id. ¶ 24].

On March 7, 2021, Anderson provided Stringham with a plot plan that included a proposed home site and a garage for the equipment needed to maintain the land, asking for Stringham's thoughts and guidance on the proposal. [Id. ¶ 28]. This plan included a discussion about rezoning certain land on the Property to build a home. [See id. (Ex. 7)]. The following day, Stringham responded to Anderson, alerting him that he was very busy, and it would take time to get back to him.[4] [Id. ¶ 29]. Stringham then took steps to email Swanson, at her town email address, and told her that Anderson was "attempting to purchase the other lot in front of the hay field from [another neighboring family] the Gemme's [sic]." [Id. ¶ 30 (quoting Ex. 6)]. In that same email to Swanson, Stringham acknowledged the difficulty in determining the rightful owner of the Lane.[5] [Id. ¶ 31]. Anderson asserts that he did not approach the Gemmes or indicate a desire to purchase their lot, nor did Stringham communicate the difficulty in determining the owner of the Lane. [Id. ¶¶ 32-33].

On April 4, 2021, Anderson emailed Stringham again with proposed plans for his residence, along with a continued request for guidance. [Id. ¶ 35]. Stringham responded two days later to inform Anderson that he could not approve the building permit for a proposed home site and a garage, he informed Anderson that he would need "clearance from Tax/Collector/Assessor Office before any sale can commence" and that they would need to "meet with [Anderson's] Land Surveyor" before proceeding. [Id. ¶ 36 (quoting Ex. 7)].

On April 16, 2021, Stringham informed Anderson that he had determined Terese Gemme ("Gemme") of 57 South Oxford Road owned the Lane and that Anderson would need to obtain an easement from her to secure a building permit. [Id. ¶ 37]. Stringham alternatively advised Anderson to

---

[4] Stringham wrote, "I have a load on my plate and [need to] get back to you." [Id. ¶ 29 (quoting Ex. 5)].

[5] Stringham wrote, "At this time the information regarding the legality of this old lane is a complete mystery. I cannot issue any building permit until this is solved. I have [to] get my hands on all the deeds behind this Old Lane." [Id. ¶ 31 (quoting Ex. 6)]

seek approval from the Zoning Board of Appeals (ZBA) to create an alternative access point via a new road from Wedgewood Lane. [6] [Id. ¶¶ 38-39]. Anderson alleges that the Lane investigation was done based on the wrong property, and Stringham later admitted to Swanson that he had never completed the investigation to make the proper determination. [Id. ¶¶ 26, 37]. The Lane investigation, however, was conducted based on the wrong property, and Stringham later admitted to Swanson that he had never completed the investigation necessary to make a proper determination. [Id. ¶¶ 26, 37].

In or around May 2021, Anderson secured a driveway permit from the Town of Millbury Department of Public Works for the continued clearing of the overgrowth on the Lane and to improve the area between the stone wall bordering either side of the Lane. [Id. ¶ 40]. Anderson also reached out to Stringham to apply for a building permit for additional indoor storage for his farm equipment, "build stalls for horses down the road," put in a septic tank, a bathroom, and a one-story home. [Id. ¶ 43 (quoting Ex. 9)]. During this time, Swanson, using her town email, messaged Stringham a series of complaints pertaining to Anderson's use of the Property. [7] [Id. ¶ 41].

Following the receipt of Swanson's emails, Stringham reached out and referenced an attempt to contact Anderson via phone call all week, claiming to have seen "a lot of dirt tracks yesterday," present on the Lane. [Id. ¶ 42 (quoting Ex. 6)]. Stringham similarly informed Anderson about the dirt tracks at the Property and advised him to "take responsibility for this," as well as stating that he would need to look

---

[6] Anderson asserts that Stringham knew or should have known that this advice was improper because of an email sent to Swanson on May 5, 2021, which stated, "We have to recognize the existing agricultural use of the back land owned by the Sharrons [sic] and that it still in 61A." [Id. ¶ 39 (quoting Ex. 8)].

[7] According to emails sent on May 3-5, 2021, Swanson wrote to Stringham via email that a second business was using the Property for their vehicles; that Mr. Anderson's trucks had started operation "before 6:30AM today!!!!"; that Mr. Anderson's employees were parking on the land again, and questioned whether the cease-and-desist that Stringham allegedly gave Anderson was still in effect. [Am. Compl. Ex. 6]. Anderson alleges that Swanson's statements were incorrect, that another business was not using the land, and asserts that his trucks are "used for exterior purposes that are dependent on daylight." [Id. ¶ 41].

into the agricultural zoning. [Id. ¶ 43 (quoting Ex. 9)]. Later that same day, Stringham emailed Swanson's

town email, acknowledging the existing agricultural use of the lot and informing Swanson that any

activities associated with typical agricultural use, were exempt from zoning. [Id. ¶ 44]. Stringham also

told her that Anderson had agreed to put off the home construction for the time being; however, Anderson

states that he never agreed to put off the construction of his home. [Id. ¶ 45].

Approximately two months after Stringham informed Anderson that Gemme was the rightful

owner of the land, Anderson asked Gemme if she would give him an easement over the Lane. [Id. ¶ 47].

Gemme responded that she would sign whatever was needed. [Id.] On June 21, 2021, Anderson emailed

Gemme, requesting her signature on a copy of an easement agreement granting him permanent access to

his land through the Lane, an agreement she never ended up signing.[8] [Id. ¶¶ 47-48].

From June 2021 to September 2021, there were several emails between Stringham, Swanson, and

Gemme in an effort to grant Stringham access to Gemme's property to gain a better understanding as to

what Anderson was doing on the Property and whether he was properly operating with a permit.[9] [Id. ¶¶

49-52]. Access to Gemme's property was necessary as it abutted Anderson's, while Swanson's property

---

[8] Based on these filings, it is unclear to the Court as to the scope of the proposed easement and whether the written document was the same as their verbal communication.

[9] On June 22, 2021, Stringham emailed Swanson, at her town email: "Have [you] been able to get Mrs. Gemme ok for me to go on her property?" [Id. ¶ 51 (quoting Ex. 11)]. Swanson responded: "My neighbor [Beverly Sylvia] is giving Theresa [sic] Gemme your contact information. Hopefully she will get in touch with you." The following day, she emailed Stringham to advise him "Matt [Anderson] does have an approved driveway permit." [Id. ¶ 52 (quoting Ex. 11)].
On September 9, 2021, Swanson emailed Stringham stating, "I just received a phone call from Triese [sic] Gemme and we had a very lengthy conversation concerning Matt Anderson activities. She is going give me permission to go on her property to assist in finding what is really going on out. She is not happy with the truck traffic, and stated she refused to sell her land to him. Have recommended to her contact an attorney to determine if there are grounds for trespass for what has been transpiring. She also stated they were attempting to get easements to install telephone poles along the old lane but she has refused to sign any easement agreement" [Id. ¶ 56 (quoting Ex. 13)].

did not. [Id. ¶ 50]. This email exchange ended on September 9, 2021, after Stringham had been given permission to enter the Property. [Id. ¶ 55]. In the meantime, having not been granted an easement, Anderson reached an agreement with the owners of 3 Wedgewood Lane to establish a second access point from 3 Wedgewood Lane, and in exchange, he would pave the driveway and pay the owners' legal fees. [Id. ¶ 53].

With a plan in place to create a second access point, on September 14, 2021, Anderson emailed Stringham requesting a meeting with him and Town Planner, Laurie Connors, to determine the proper next steps and discuss a possible one-house lot on the Property. [Id. ¶ 59]. Stringham responded to Anderson's email saying that he would be available for a meeting and additionally inquired as to why trucks were coming in and out of the property and hauling fill material. [Id. ¶¶ 60-61, Ex. 14]. Anderson never responded.[10] [Id.] On the afternoon of September 14, 2021, Anderson met with Laurie Connors alone. [Id. ¶ 62]. Connors provided Anderson with directions on how to move forward with obtaining a building permit for the driveway and explained step-by-step what was needed for the ZBA meeting. [Id.]

That evening, Stringham emailed Gemme informing her that Anderson was having meetings to discuss building a home on the Property and informed her about what he had witnessed occurring on the Property.[11] [Id. ¶¶ 63-65]. Additionally, he encouraged her to seek legal advice regarding all aspects of the property, asserting some remaining confusion regarding legal rights to pass and repass over the Lane. [Id. Ex. 15]. On September 15, 2021, Gemme informed Stringham that she had contacted two attorneys about representing her. [Id. ¶ 69].

---

[10] Stringham had informed Anderson five months prior that he did not have the right to construct on his property without the proper permits or access to the property. [Id. ¶ 68]. Without the proper permitting Anderson continued to pursue construction on the property. [Id. ¶ 45].
[11] Anderson states that the email to Gemme was first sent to Swanson for her review. [Id. ¶ 63].

On October 21, 2021, Gemme emailed Stringham with an update to her legal inquiries, including requesting his assistance related to the criminal cease and desist order she was planning to file against Anderson, as well as alerting him that Anderson had installed a gate making it so she could no longer access the Lane.[12] [Id. ¶¶ 72-73, Ex. 15].

On September 28, 2021, Anderson emailed Stringham the documents he reviewed with Laurie Connors and asked for his assistance in arranging a ZBA hearing. [Id. ¶ 70]. In response, Stringham indicated he would need to issue a denial letter and that following the denial. Anderson could file an appeal with the Town Clerk. [Id. ¶ 71]. He also told Anderson that he needed to present two separate checks. [Id.]

### i. Events after Anderson's formal purchase of the Property

On December 21, 2021, Anderson acquired title to the Property from the Sharrons and the deed was recorded. [Id. ¶ 74]. According to Anderson, Stringham intentionally delayed his denial letter for construction and misinformed Anderson that a denial letter had to be filed before any further action could be taken.[13] Nevertheless, on February 23, 2022, Stringham reached out to Anderson to inform him he was working on the denial letter and recommended seeking legal representation for the appeals hearing, highlighting which area of law would likely be the biggest hurdle. [Id. ¶ 75, Ex. 17]. Anderson responded to that email on March 4, 2022, asking if he was going to be on the ZBA schedule for the upcoming month. [Id. ¶ 78]. Stringham responded, "[i]t would have had to have been filed last Tuesday," meaning March 1, 2022. [Id. ¶ 78 (quoting Ex. 17)]. Anderson responded with his urgent need for the letter, and Stringham

---

[12] "I am following up on our previous conversations. Beverly Sylvia told me she had spoken to you and that I need to file a criminal cease and desist order. Is it possible to speak with you to confirm this, and to confirm that the town documents support this request. [Id. ¶ 72 (quoting Ex. 15)]. October 22, 2021, Stringham advised Ms. Gemme by email: "Depending on how it is structured a claim of criminal trespass could be brought," and that "this is what I have seen over the years in such cases." [Id. ¶ 73].

[13] Anderson asserts that Stringham, as Building Inspector, should have known that an appeal could be filed if Stringham failed to respond within 30 days of the request. He asserts that as a matter of law, a late response means the request is deemed denied and can be appealed. [Id. ¶ 76].

apologized for the delay. [Id.] During the month of March, Anderson emailed Stringham about the denial letter an additional three times. [Id. ¶¶ 82-83, 86]. Stringham finally responded on April 4, 2022, that the letter was completed and that he had attempted to contact Anderson three days prior. [Id. ¶¶ 92-93].

On or around March 30, 2022, Anderson, as Stringham advised, retained an attorney to prepare and submit his petition for the ZBA meeting. [Id. ¶ 84, Ex. 17]. That same day, Anderson emailed a copy of the driveway plan for the alternate access point at 3 Wedgewood Lane to the now Town Planner, Conor McCormack. [Id. ¶ 85]. McCormack denied the driveway plan and encouraged Anderson to continue with the Board of Appeals application. [Id.]

On March 31, 2022, Stringham informed Swanson that Anderson had been served with a letter from Gemme's Attorney. [Id. ¶ 91]. He further informed Swanson that he denied Anderson's request for a temporary driveway through 3 Wedgewood Lane. [Id.]  Anderson picked up the denial letter on April 4 and was told by Stringham to submit his paperwork to the Planning and Development Clerk, Collins. [Id. ¶ 95]. Anderson gave his paperwork to Collins and provided a check made payable to the Town of Millbury dated April 4, 2022, and a second check for publication in the local newspaper. [Id. ¶ 97]. Instead of processing Anderson's submittal, Collins held Anderson's application and both checks. [Id. ¶ 100].

On April 21, 2022, when Anderson realized that his notice had not been published in the newspaper and it had not been mailed to his land abutters, he went to the Town Clerk's Office and spoke with Town Clerk, Jayne Marie Davolio. [Id. ¶ 101]. Ms. Davolio went to Collins' desk and located Anderson's paperwork, as well as both checks. [Id. ¶ 102]. Anderson hand-filed his submission on April 4, 2022; however, Collins did not stamp Anderson's application as being received until April 11, 2022, making it appear as if Anderson had missed the deadline. [Id. ¶ 104]. Ms. Davolio informed Anderson that the policy had always been only one check, not two, and was unsure why the Town Building Inspector had mistakenly instructed Anderson. [Id. ¶ 105]. On or around April 21, 2022, Anderson contacted the head of

the ZBA, Ken Perro, and requested a special meeting of the Board to hear his petition for an alternate access point on Wedgewood Lane, which was granted. [Id. ¶ 107]. On or around June 8, 2022, Anderson's then attorney notified the Town Clerk's office that he also submitted the brief via fax to the Town of Millbury – Board of Appeals, the transmission report was received at 11:39:07 AM with the results listed as "Confirmed." [Id. ¶ 108]. On June 8, 2022, when Anderson's turn came to present, he was informed that the Town had not received all elements of his petition and, therefore, had been unable to distribute it to the Board members. [Id. ¶ 109]. Anderson asserts that the ZBA would have postponed and further delayed the meeting if he had not brought additional copies of his submission. [Id. ¶ 110].

Another issue that arose following the formal purchase of the property was the zoning classification of the Property. On October 18, 2022, a Board of Assessors meeting was held wherein the Board approved Anderson's application for retention of 61A Agricultural Land Clarification. [Id. ¶ 120]. On or around January 6, 2023, Anderson met with McCormack, the Town Planner, at his office in the municipal town building for a private discussion regarding Mass. Gen. Laws. ch. 40A § 3. [Id. ¶ 124]. During the meeting, McCormick referenced a recent issue with the transfer of Anderson's land from the Sharrons' 61A classification to one in Anderson's name. [Id. ¶ 125]. As Anderson was explaining that the Town had made a mistake with the transfer issue, Collins proclaimed that the issues were not a mistake, but instead Anderson was intentionally removed from the program. [Id. ¶ 127].

### b.  Gemme's Legal Actions

As Anderson was proceeding with Stringham and other parties in an attempt to obtain permission to build on the Property and utilize the Lane, Gemme, on or around March 16, 2022 had the law firm of Mountain, Dearborn & Whiting LLP ("Mountain Dearborn"), serve Anderson, by Constable, a cease-and-desist letter, asserting that he was committing a trespass on her property through his construction and

frequent use. [Id. ¶¶ 79-80]. The letter demanded the restoration of the Lane to its previous condition. [Id. ¶ 80].

After the ZBA granted Anderson's petition for an alternate access point on Wedgewood Lane, Gemme's attorney filed an appeal in the Worcester County Superior Court on July 6, 2022, in the matter captioned Gemme v. Anderson, 2285CV00771. [Id. ¶ 113]. On July 22, 2022, because of Gemme's appeal, Anderson contracted Timothy R. Callahan from Hawk Consulting Inc. who confirmed that Anderson was the only party who bore right and title to the Lane. [Id. ¶ 116]. When it became evident that Gemme was not going to withdraw her appeal, Anderson filed a complaint in Land Court against Gemme to establish his right to access the Property via the Lane. [Id. ¶ 118].

On March 9, 2023, Gemme and Swanson's husband sought an injunction in the Land Court to prevent Anderson from using the Lane. [Id. ¶ 130]. On March 16, 2023, Anderson, Steve Sharron, Francis B. King, and Karl Swenson all submitted signed and notarized Affidavits attesting to the Sharron family lineage as sole owners of the Lane. [Id. ¶ 131]. Gemme acknowledged Sharron's control of the Lane and requested Sharron's permission to access it. [Id.] On June 28, 2023, Swanson and her husband John Swanson were deposed. [Id. ¶ 133]. Both depositions confirmed the Swansons had observed the Sharrons using the Lane to access what was then their parcel of land. [Id.] Following the depositions, a settlement was agreed upon, which granted Anderson access and ownership to the Lane, and required Gemme to drop her appeal. [Id. ¶ 134]. Anderson, in return, was required to give Gemme a portion of land to develop an easement on, appear before the Planning Board to grant the Swansons a piece of his land that the Swansons had built their driveway over, and was required to pay for plans to legally grant the land to each party. [Id.]

## II.    <u>Procedural History</u>

On March 16, 2022, Gemme, served Anderson with a cease-and-desist letter regarding Anderson's use of the Lane. [<u>Id.</u> ¶ 80]. After the ZBA granted Anderson's petition for an alternate access point, Gemme's attorney filed an appeal in the Worcester County Superior Court on July 6, 2022.[14] [<u>Id.</u> ¶ 113]. Anderson filed a complaint in Land Court against Gemme to establish his right to access the Property via the Lane. [<u>Id.</u> ¶ 118]. On March 9, 2023, Gemme and Swanson's husband sought an injunction in the Land Court to prevent Anderson from using the Lane, which was eventually settled. [<u>Id.</u> ¶¶ 130, 134].

On June 10, 2024, Anderson filed his complaint, [ECF No. 1-1], in the Worcester Superior Court. On December 5, 2024, Anderson filed his amended complaint, [Am. Compl. ECF No. 1-2], which is now the operative complaint.

On January 6, 2025, Defendant Town of Millbury removed the case to this Court under federal question jurisdiction, [ECF No. 1], and the Defendants filed their motions to dismiss for failure to state a claim within the month. [ECF No. 8; 11; 14].

On February 5, 2025, Anderson filed his opposition to the Town of Millbury's motion to dismiss. [ECF No. 20]. In his opposition, Anderson agreed to dismiss Counts III-V: Violation of the Massachusetts Civil Rights Act G.L.C. 12 §§11H and 11I, Abuse of Process, and Intentional Infliction of Emotional Distress, against the Town of Millbury. [<u>Id.</u> at 1, n.1]. On February 13, 2025, Anderson filed his oppositions to the other Defendants' motions to dismiss, maintaining all claims against the individual defendants. [ECF No. 23; 24].

## III.    <u>LEGAL STANDARDS</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>,

---

[14] <u>Gemme v. Anderson</u>, No. 2285CV00771, Mass. Super. Ct. (Worcester Cnty. June 15, 2021).

556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S., at 556). When deciding a 12(b)(6) motion to dismiss, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012) (citing Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citations omitted).

At the pleading stage, a plaintiff is not required to "plead facts sufficient to establish a prima facie case," but "those elements are part of the background against which a plausibility determination should be made." Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).

## IV.   DISCUSSION

### a.   Plaintiff Has Standing to Claim Defendants Committed Wrongful Actions Before December 20, 2021

The Defendants argue that Plaintiff lacks standing to assert any claim based on facts that occurred before December 20, 2021, the date the Property was conveyed to Anderson. To assert a constitutional claim under Section 1983, a plaintiff must first establish that the defendants deprived them of a constitutional right. See Cummings v. S. Portland Hous. Auth., 985 F.2d 1, 1 (1st Cir. 1993). Here, Anderson is asserting that Defendants deprived him of his constitutional right to property. Anderson

asserts that the conduct on behalf of Defendants began on December 20, 2020; however, Anderson did not acquire title to the Property until December 21, 2021. [Am. Compl. ¶¶ 21, 74].

Defendants do not address in their argument the fact that Anderson had been leasing the Property since October 2020. [Id. ¶¶ 17-18]. A leasehold interest can qualify as a constitutionally protected property right for purposes of asserting a claim under Section 1983, provided that the interest is recognized as a legitimate property interest under state law. See generally, Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). The Massachusetts Supreme Judicial Court has repeatedly treated a leaseholder as someone with interest. See Universal Container Corp. v. Cambridge, 278 N.E.2d 727, 728 (Mass. 1972) (holding lessee was entitled to compensation for the taking of its leasehold in an eminent domain proceeding, recognizing the city's constructive notice of the lessee's interest); see also, Bos. Hous. Auth. v. Hemingway, 293 N.E.2d 831, 837 (Mass. 1973) (recognizing that leases historically convey an interest in the land); Mass. Gen. Laws ch. 223, § 62. A leaseholder maintains a right to access the property. The Plaintiff asserts that the Defendant's actions during the time at hand obstructed and interfered with him accessing the Property via the Lane and interfered with setting up an alternative point of access. Thus, Plaintiff has standing to pursue his claims.

### b.  Section 1983 CLAIMS

Anderson brings two claims under 42 U.S.C. § 1983 against all Defendants for violations of his rights to equal protection and due process under the Fourteenth Amendment (Counts I and II).[15] Anderson asserts that Defendants have intentionally and wrongfully singled him out for adverse treatment relating to his property rights and that this difference in treatment was motivated by bad faith and malicious intent

---

[15] Plaintiff does not specify that he is bringing this action under the Fourteenth Amendment, however, the Court will construe the complaint to allege Fourteenth Amendment violations. Fed. R. Civ. P. 8(e) ("Pleadings must be construed as to do justice").

to injure him. [Am. Compl. ¶¶ 135-154]. He alleges that the Defendants' actions were intentional, arbitrary, irrational, and without authority of law. [Id.]

Section 1983 provides a cause of action for monetary damages against state actors sued in their individual capacities "who acted under color of state law to deprive the plaintiff of a right guaranteed by the Constitution or by federal law." Kelley v. LaForce, 288 F.3d 1, 6 (1st Cir. 2002); see also, 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides a 'method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144, n.3 (1979)). Accordingly, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

### i.  COUNT 1 – SECTION 1983 - EQUAL PROTECTION

Anderson asserts that Defendants have intentionally and wrongfully singled him out for adverse treatment relating to his property rights and that this difference in treatment was motivated by bad faith and malicious intent to injure him.  [Am. Compl. ¶¶ 135- 154]. Anderson does not highlight the specific actions by the Defendants that the Court should consider in its equal protection analysis; instead he asserts a general scheme to delay and misinform, which Anderson asserts led to a violation of his rights. The Defendants move to dismiss this claim in their separate motions, asserting that Stringham's mistake regarding ownership of the lane, and the following administrative delays, do not rise to the level of bad faith or malicious intent necessary for an equal protection claim, nor does Anderson properly assert a cognizable claim as a "class of one." [ECF No. 10 at 11-13; ECF No. 12 at 7-11; ECF No. 15 at 8-9].

"Under the Equal Protection Clause, persons similarly situated must be accorded similar governmental treatment." Marrero-Gutierrez v. Molina, 491 F.3d 1, 9 (1st Cir. 2007). A plaintiff can

plausibly plead an equal protection claim by alleging facts demonstrating he, (1) was "selectively treated because of his membership in a particular class or group," Brooks v. Town of Worthington, Civil Action No. 24-30024-MGM, 2025 U.S. Dist. LEXIS 186759, at *18 (D. Mass. Sep. 23, 2025), or (2) is a "class of one" who was intentionally, and without rational basis, treated differently from others who were similarly situated. Back Beach Neighbors Comm. v. Town of Rockport, 63 F.4th 126, 130 (1st Cir. 2023). In Anderson's equal protection claims, he is ultimately asserting a disparate treatment claim. To prevail, he must show that he "engaged in the same activity vis-à-vis the government entity without such distinguishing or mitigating circumstances as would render the comparison inutile." Back Beach Neighbors, 63 F.4th, at 131 (quoting Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st Cir. 2007). The First Circuit has held that "class-of-one claims require 'an extremely high degree of similarity between [the plaintiffs] and the persons to whom they compare themselves.'" Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (citing Cordi-Allen, 494 F.3d, at 251). This showing of disparate treatment is a "threshold requirement" for any equal protection claim. Ayala-Sepulveda v. Mun. of San German, 671 F.3d 24, 32 (1st Cir. 2012); see Buchanan v. Maine, 469 F.3d 158, 177-78 (1st Cir. 2006) (affirming summary judgment to defendant on a "class of one" equal protection claim because the plaintiff "failed to show any 'specific instances' involving similarly situated individuals" that were treated differently) (emphasis omitted).

Anderson alleges that he is a "class of one" for his equal protection claim, asserting that the town employees abused their power to mislead Anderson and deny him access to his property. He claims that he was treated differently than the prior owners of the property, the Sharrons, who also used the property for agricultural purposes. Anderson claims that he used the Property in the same manner as the prior owners had for over seventy years and that there was no rational reason to treat Plaintiff differently from the prior owners. [ECF No. 20 at 11-12]. In class-of-one claims, Anderson must assert that "the defendant's

differential treatment of the plaintiff was motivated by 'bad faith or malicious intent to injure. '" Snyder v. Gaudet, 756 F.3d 30, 34 (1st Cir. 2014) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 911 (1st Cir. 1995)).

Here, Anderson has not plausibly alleged that he was treated differently from others similarly situated. [See generally, Am. Compl.; ECF Nos. 20; 23; 24]. Nor can he argue that the Defendants were motivated by bad faith or a malicious intent to injure. Snyder, 756 F.3d, at 34. Rather, the record demonstrates that the Defendants were responding to Anderson's own actions. By Anderson's own account, after he began leasing the property, he quickly began construction work, storing heavy machinery on the Property, and expanding the Lane at issue.  It is true that Anderson continued to hay the property in a similar manner as the previous owners and that the Sharrons had used the Lane to access the property. [Am. Compl. ¶¶ 9, 18]. However, the concern here arose not from Anderson's everyday use of the Lane, but the fact that he was using it for heavy machinery and because he began construction to expand the historic "old Lane." [Id. at 40 (Ex. 6)].

In May 2021, Anderson messaged Stringham stating that he wanted to apply for a building permit for additional indoor storage for his farm equipment, "build stalls for horses down the road," put in a septic tank, a bathroom, and a one-story home. [Id. at 48 (Ex. 9)]. Amongst the many discussions between Anderson and Stringham, and Stringham and the other Defendants, it was clear that Anderson was pursuing construction projects and storing heavy machinery related to his professional use, versus his farm use, at the property regardless of any permission or permitting from the Town and its employees. [Id. at 43 (Ex. 7) (". . . I cannot legally issue any building permit on this back lot parcel of property for any new dwelling. It can continue to be used as agricultural hay field."); id. at 48 (Ex. 9) ("to build something that size the foundation needs to be designed and stamped by an engineer."); id. at 81 (Ex. 22)  (". . . we concluded we are not able to approve the temporary driveway/access you described as it would constitute substantial construction without a permit. . . . [T]he proposed driveway is within the 100' buffer zone of

the wetland resource area. You cannot do work within the buffer work without a valid Order of Conditions from the Conservation Commission.")]. Much of the discussion between the Defendants was noting the substantial construction Anderson was undertaking prior to receiving any approval from the Town. [See id. at 50 (Ex. 11), Email from Swanson to Stringham, ("Just wondering if Matt has some kind of permit? A 10-wheel dump truck has been bringing in multiple loads to fill.")]; see generally, id. (Ex. 6); id. (Ex. 13); id. (Ex. 15)].

Anderson fails to meet his burden in showing that he was treated differently from similarly situated individuals because he has not provided any information that the previous owners, the Sharrons, conducted similar construction projects with their land. Nor has he alleged any interactions between the Sharrons and the Town of Millbury or its Zoning Board. Moreover, Anderson has not alleged enough about the delays in his permitting to support an inference that Defendants lacked a rational basis for delays in his approval for construction. It is important to note that the individual defendants in this action were working under the mistake of fact regarding the true ownership of the Lane in question. [Id. ¶ 37]. The fact that Anderson needed to wait a few months for the proper zoning and permitting of these construction projects does not support an inference of "bad faith or malicious intent to injure." Snyder, 756 F.3d, at 34.

Therefore, the motions to dismiss by all Defendants as to Count I are **GRANTED**.

### ii.  COUNT II – SECTION 1983 - SUBSTANTIVE DUE PROCESS

The Due Process Clause of the Fourteenth Amendment "has both 'substantive and procedural components.'" Kenyon v. Cedeno-Rivera, 47 F.4th 12, 23 (1st Cir. 2022) (quoting Pagán v. Calderón, 448 F.3d 16, 32 (1st Cir. 2006)). Under § 1983 individuals "may sue certain persons for depriving them of federally assured rights, such as . . . the Fourteenth Amendment's right to procedural due process." Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (citing Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 n.2 (1st Cir. 2005)). Procedural protections require the government to use fair

procedures in dealings with private persons. Harron v. Town of Franklin, 660 F.3d 531, 535 (1st Cir. 2011). The substantive component of due process "'safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them.'" Id. (quoting DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005)). Anderson did not specify in his Amended Complaint whether he is bringing a claim for the violation of his procedural or substantive rights. [See Am. Compl.]. However, in subsequent pleadings, he focused exclusively on substantive due process in his arguments. [See ECF No. 20 at 13-14; ECF No. 23 at 10-12; ECF No. 24 at 10-12]. Therefore, the Court will focus on the substantive due process analysis.

To establish a substantive due process claim, Anderson must sufficiently allege "that the acts [against him] were so egregious as to shock the conscience" and that such acts deprived him of a "protected interest in life, liberty, or property." Pagán v Calderon, 448 F.3d 16, 32 (1st Cir. 2006). "[C]onscience-shocking conduct is an indispensable element of a substantive due process challenge to executive action." DePoutot, 424 F.3d, at 118 n.4. The First Circuit has identified examples of "extreme or egregious" conduct to include cases of "intentional framing of innocent citizens for serious crimes they did not commit," and instances of "extreme or intrusive physical contact." Id. at 119 (citing first, Limone v. Condon, 372 F.3d 39, 44-45 (1st Cir. 2004); citing second, Souza v. Pina, 53 F.3d 423, 427 (1st Cir. 1995)); see also, Gonzàlez-Fuentes v. Molina, 607 F.3d 864, 881 (1st Cir. 2010) ( "[a] hallmark of successful challenges is an extreme lack of proportionality, as the test is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.") (internal quotation marks and ellipses omitted).

The First Circuit has "held, with a regularity bordering on the monotonous, that the substantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decisionmakers, whether those decisions are right or wrong." Pagán, 448 F.3d at 33; see Mongeau v. City of Marlborough, 492 F.3d 14, 20 (1st Cir. 2007) (concluding a plaintiff who alleges he was wrongfully denied a permit "may find recourse in other laws, but not in the substantive component of the Due Process Clause of the Fourteenth Amendment").

Here, Anderson alleges that Defendants violated his substantive due process rights to property due to delays and denial of permits for construction and a common scheme to limit his access to his property. The facts in this case do not appear to "shock the conscience." Pagán, 448 F.3d, at 32. Anderson, at most, alleged that Defendants mistakenly advised him to get a permit for his construction on his land and denied his proposed construction plan, which was ultimately remedied by subsequent court actions. Anderson has not established any actions of Defendants which can be properly described as "extreme or egregious." Id.

Therefore, the Motions to Dismiss on Count II are **GRANTED** for all Defendants.

## i.   ISSUES OF IMMUNITY

Since the Court finds that all of Plaintiff's Section 1983 claims fail to survive the motion to dismiss, it need not address whether the Defendants are entitled to qualified immunity. See Boylston CP, LLC v. Town v. Town of Boylston, No. 4-21-40132-MRG, 2025 U.S. Dist. LEXIS 5116, at *27 (D. Mass Jan. 10, 2025).

## V.   COUNTS III-VI – VIOLATION OF MASSACHUSSETTS CIVIL RIGHTS ACT (MASS. GEN. LAW CH. 12 §§ 11H AND 11I); ABUSE OF PROCESS; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Having determined that Counts I and II (the Section 1983 claims) fail and given that the Defendants' basis for removal "was the purported presence of a federal question[,]" the Court will not exercise supplemental jurisdiction over the remaining state claims. Ryan v. UMass Mem'l Health, 728 F.

Supp. 3d 215, 221 (D. Mass. 2024) (collecting cases); see Lambert v. Fiorentini, 949 F.3d 22, 29 (1st Cir.

2020) ("[a]s a general principle, the unfavorable disposition of a plaintiff's federal claims at the early

stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims.")

(citations omitted). As the Supreme Court has stated:

> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not
> of plaintiff's right. . . . Needless decisions of state law should be avoided both as a matter
> of comity and to promote justice between the parties . . . if the federal claims are dismissed
> before trial . . . the state claims should be dismissed as well.

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (citations omitted).

Therefore, the Court will **DISMISS** Counts III-VI without prejudice.

## VI.    **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motions to Dismiss [ECF No. 8; 11; 14],

as to Counts I and II with prejudice, and **DISMISSES** Counts III-VI without prejudice.

**SO ORDERED.**

Dated: September 30, 2025

 /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge